# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 1:07-CR-103 |
| | ) | |
| BRETT JONES | ) | |

## OPINION AND ORDER

This matter is before the court on the "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" filed by the defendant, Brett Jones, on July 19, 2010 (docket at 88). The government filed a response in opposition to the motion on August 19, 2010 (docket at 91) and Jones filed a reply brief on October 14, 2010 (docket at 94). For the reasons discussed below, the defendant's motion is DENIED.

## DISCUSSION

On July 29, 2008, a jury convicted Brett Jones of one count of possession with intent to distribute cocaine base, or "crack." On October 16, 2008, this court sentenced Jones to a term of imprisonment of 130 months. Jones filed the present motion alleging ineffective assistance of counsel, arguing that his attorney, Ms. Linda Wagoner, failed to raise certain facts at trial and/or failed to object to the admission of certain evidence. Jones also apparently claims that his Fifth Amendment right against "double jeopardy" was violated, although, as discussed below, his argument and reasoning on this issue cannot readily be deduced from his pleadings. In any event, none of Jones's arguments are valid.

The underlying facts of this case were presented exhaustively in this court's Opinion and Order entered on June 10, 2008, in which the court ruled on Jones's pretrial motion to suppress (docket at 43) and in the government's response in opposition to the present motion to suppress

(docket at 91). Accordingly, the court concludes that another detailed recitation of those facts is not necessary at this time. In any event, the underlying facts have little relevance to the complaints Jones raises now about his attorney's allegedly ineffective performance at trial.

The standard of review for claims of ineffective assistance of counsel has been long established and defendants must overcome a rather onerous burden. As the Seventh Circuit Court of Appeals has explained:

> To establish ineffective assistance of trial counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 689-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Banks,* 405 F.3d 559, 568-69 (7th Cir.2005). We begin with the assumption that Johnson's counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. To establish deficient performance in spite of that assumption, Johnson must show that counsel's representation "fell below an objective standard of reasonableness" based on prevailing norms of professional conduct. *Id.* at 688. Even if Johnson can establish deficient performance, his task is not at an end-he must also demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

*Johnson v. Thurmer*, 2010 WL 4055565, 4 (7th Cir. DATE).

The bases of Jones' claims of ineffective assistance of counsel are difficult to discern from his motion, although he is a bit more specific in his reply brief. Since Jones is proceeding *pro se*, the court has an obligation to liberally construe his pleadings to address any issues raised in them. *Ward v. Jenkins*, 613 F.3d 692, 700 (7th Cir. 2010). In his motion, Jones sets forth four grounds for challenging his conviction and/or sentence, three of which involve alleged ineffective assistance of counsel and one of which involves what Jones perceives as a Fifth Amendment violation. He alleges that his trial counsel was ineffective in the following ways:

2

1. "Trial counsel raised facts that supports [sic] a defense." Motion to Vacate, p. 4. It appears that this allegation contains a typographical error and that Jones intended to state that his attorney *failed* to pursue facts that supported a defense. More specifically, Jones claims that it was significant that Detective Engelman, the police officer that arrested him and searched him subsequent to that arrest, failed to mention in his written arrest report that the cocaine Jones was convicted of possessing was packaged in separate baggies. *Id*. Jones apparently believes that when Engelman admitted on the witness stand that he did not mention that fact in his report, his counsel should have made hay with that alleged discrepancy and that doing so would have turned the tide of the trial in his favor.

2. "Trial counsel fail[ed] to object to evidence." Motion to Vacate, p. 5. Jones claims that his counsel was ineffective when she failed to object to the introduction of evidence, specifically, the crack cocaine that was found on Jones' person when he was searched after being taken to jail.

3. Jones next complains that his attorney somehow failed to challenge Detective Engelman when he testified that had not reviewed the search warrant issued subsequent to Jones' arrest, which police used to search Jones' residence–a search that did not recover additional evidence of drug trafficking activity. *Id*., pp. 7-8.

Finally, Jones makes a claim that he was subjected to "double jeopardy" in violation of his Fifth Amendment rights. *Id*., p. 8. This is a particularly confusing allegation. Jones states in his motion that the cash he had in his possession at the time he was arrested was seized by the government through "a seizure process." *Id*., p. 9. He then states that he "was found guilty of possession with the intent to distribute . . ." Apparently, so far as the court can discern, Jones

contends that the double jeopardy clause is invoked as a result of the seizure of his cash and the fact that he was also convicted of possession with intent to distribute drugs.

The government responds to Jones' first allegation by stating that "[w]hile not clearly stated, it appears that Jones is arguing that the government did not prove that the crack cocaine he possessed was intended for distribution, and that his trial counsel was ineffective for failing to move for a judgment of acquittal on that ground." Government's Response, p. 5. The government argues that this contention is without merit:

> The trial transcript passage cited by Jones highlights the fact [that] Officer Engleman's [sic][1] report did not specifically state that the crack cocaine was packaged in four baggies. . . . That is irrelevant. Officer Engleman as well as Det[ective] Gigli both testified that what was removed from Jones' buttocks was four clear plastic baggies of crack cocaine contained within another clear plastic bag. The net weight of the crack cocaine was 13.67 grams. Officer Engleman and Officer Gigli testified that the manner in which the crack cocaine was packaged was also consistent with narcotics distribution activity. As there clearly was evidence that the crack cocaine possessed by Jones was intended for distribution, the performance of Jones' trial attorney did not fall [below] the objective standard of reasonableness contemplated in *Strickland*.

Government's Response, p. 5. It is true that Jones makes much about the fact that Engelman did not state in his written arrest report that the crack cocaine discovered on his body during a search subsequent to his arrest was packaged in separate packages. It is also true, as the government argues, that this is irrelevant. Both police officers involved in the arrest and search of Jones–Engelman and Gigli–testified about how the crack was packaged. Trial Transcript at pp. 60-61 and 91. In addition, as the government also points out, the evidence revealed that at the time he was arrested, Jones was in possession of $2,249 in cash and this cash was packaged "in

---

[1] The correct spelling of Detective Engelman's last name is Engelman, not Engleman. Trial Transcript, p. 55.

plastic baggies, and there was $500 in each plastic baggie." Tr., p. 59. Detective Engelman testified that the packaging of cash in this manner is consistent with drug trafficking. *Id*., p. 60.

Jones contends that the testimony of the two officers concerning the manner in which the crack cocaine was packaged "is irrelevant." Defendant's Reply, p. 3. According to Jones, since the police report makes reference to "a clear plastic baggie . . ." rather than three plastic bags *within* a fourth bag, the evidence was insufficient to sustain his conviction for possession with intent. *Id*. This is nothing more than an attempt by Jones to find one of those always elusive "technicalities" that will somehow invalidate his conviction. But the evidence presented at trial was clear–police discovered cash and crack cocaine when they searched Jones subsequent to his arrest. The manner in which both the cash and the crack were packaged were consistent with drug trafficking activity, according to the testimony of officers Engelman and Gigli. Jones' attorney did not render ineffective assistance by failing to move for a judgment of acquittal based on what Jones believes was an inconsistency in the evidence.[2]

Jones next argues that his attorney rendered ineffective assistance due to her alleged failure to object to the introduction of Government's Exhibit 2, which was the crack cocaine found on Jones' person. Motion to Vacate, p. 5. In its response, the government notes that in fact defense counsel did lodge an objection to the admission of this evidence. Government's Response, p. 6. When the assistant United States Attorney moved for the admission of this evidence, and the court asked defense counsel if she had any objection, counsel responded,

---

[2] In fact, the court notes that Jones' attorney questioned a witness, Troy Ballard, a supervisor at the Indiana State Police Laboratory, concerning the manner in which the crack cocaine was packaged. Tr., p. 119. She was able to elicit testimony from Ballard that he could not recall whether the three smaller bags were contained within a fourth larger bag. *Id*. The jury obviously did not consider this evidence to be significant.

"[j]ust the objection previously made, your Honor." Tr., p. 117. This previous objection was first lodged during a pretrial suppression hearing held on March 19, 2008 (see docket at 34). As the government explains:

> [Jones'] trial counsel did object to the admission of Exhibit 2. Counsel cited "the objection previously made" as grounds for the objection. What Jones likely did not hear was that his trial counsel advised the Court during a previous sidebar of what exactly was meant by "the objection previously made." "The objection previously made" was a reference to the objections made in Jones' motion to suppress. Those grounds were explicitly stated, and known to all parties at the time Exhibit 2 was offered for admission by the government.

Government's Response, p. 6. In short, defense counsel did lodge an objection to the admission of the crack cocaine and that objection was overruled. It would appear that what Jones is really complaining about is not his attorney's failure to object (which she did), but her failure to prevent the admission of the crack cocaine into evidence. "If trial counsel would have objected to the physical evidence Exhibit # 2 and alteration it would have been excluded. . . . Without the excluded evidence Mr. Jones would be acquitted." Defendant's Reply, p. 9. There was ample evidence presented at trial to establish that Jones was involved in drug trafficking activity, regardless of whether the crack cocaine itself had been introduced into evidence. But that is not the issue anyway. Jones' attorney objected to the admission of that evidence, the court overruled that objection, and government's Exhibit 2 was admitted. Accordingly, Jones' assertion that his attorney's performance was deficient due to her failure to object to and prevent the admission of government's Exhibit 2 is without merit.

Jones also argues that his attorney's performance was defective since she somehow failed to question Detective Engelman properly enough or thoroughly enough regarding a search of Jones' home that occurred after his arrest. Motion to Vacate, pp. 6-7. At one point during the

6

trial, defense counsel asked Engelman if it was common for drug traffickers to be in possession of such items as scales, drug ledgers, and "customer" lists and phone numbers. Tr., p. 69. Engelman responded affirmatively. *Id.* Defense counsel then asked Detective Engelman if any such items were recovered from Jones' residence when police searched it after obtaining a search warrant. *Id.*, pp. 69-70. Engelman responded by stating that he did not participate in obtaining the search warrant, did not participate in the search, and did not know what, if anything, was recovered from Jones' residence. *Id.* (It is undisputed that no such evidence was discovered.) As the government states, "Jones appears to be arguing that the lack of indicia of narcotics distribution found in the home would have had some bearing on whether in fact the crack cocaine found in his possession was intended for distribution." Government's Response, p. 7. Indeed, Jones seems to be arguing that his counsel was ineffective because she failed to adequately pursue this issue at trial. But in fact, defense counsel did question Detective Engelman about this issue. Defense counsel was also successful in ensuring the jury was aware that no such items were found in Jones' home. Tr., p. 70, line 10. However, once counsel learned that Engelman was not personally involved in the search of Jones' home and had no personal knowledge of what was or was not discovered there, she wisely moved on with her cross examination. In any event, the government is correct when it points out that "[t]he search warrant executed at Jones' home was completely unrelated to the circumstances surrounding the discovery of crack cocaine on his person. . . . Since the search warrant is completely irrelevant to the issue of Jones' intent to distribute the crack cocaine in his possession, the failure of his trial counsel to make any specific argument on that point can hardly be deemed objectively unreasonable performance." Government's Response, p. 7. Once again, Jones' argument is

7

without merit.

Finally, Jones argues that his Fifth Amendment right to be free from "double jeopardy" was violated in this case. Motion to Vacate, p. 9. In support of this argument, Jones states as follows:

> The money was discovered in Mr. Jones' front pockets and was packaged in individual plastic baggies with $500 in each baggie. (Tr. T. 59.) The money went through a seizure process. (Trial Tr. 75.). On July 29, 2008, Mr. Jones was found guilty of possession with the intent to distribute [at] least five grams, but less than 20 grams. (Trial Tr. 166.)

*Id*. Jones makes no attempt to explain how this fact implicates the "double jeopardy" clause of the Fifth Amendment. The court presumes he is arguing that since the cash discovered on him at the time of his arrest was later seized by the U.S. government, he could not also be put on trial for possession of a controlled substance with intent to distribute. Jones offers no further explanation (or, for that matter, even a mention) of this issue in his reply brief. The government also did not address this issue in its response brief, apparently believing it did not warrant any response. The argument is legally frivolous since the seizure or forfeiture of property seized in the course of a drug investigation and/or arrest does not preclude the prosecution of the owner of that property on drug trafficking charges. This argument deserves no further attention or analysis.

Jones' motion to vacate attempts to create issues where none exist. He attempts to characterize his attorney's efforts at trial as falling below the "objective standard of reasonableness" set forth in *Strickland*. He fails to present any non-frivolous arguments. Jones

had the benefit, whether he realizes it or not, of a gallant effort by his trial counsel, Ms. Linda Wagoner, who worked diligently to present issues to the jury that might create reasonable doubt in the minds of the jurors. She had very little to work with given the overwhelming evidence against her client. But Ms. Wagoner, whose appearances in this court over the past several years have demonstrated her unquestionable competency in representing criminal defendants, forged ahead in her attempts to raise doubt in the minds of the jurors concerning the charge against Jones. The fact that Jones now takes issue with a few (very few, actually) of his attorney's actions or strategies during the course of trial does not mean that her performance was in any way unreasonable or ineffective. The fact that Jones might believe that his counsel could have or should have employed a different strategy when addressing certain factual issues at trial does not render her performance ineffective. Trial strategies are left to the discretion of counsel and second guessing those decision in hindsight rarely provides a meritorious basis for a claim of ineffective assistance. *See Gentry v. Sevier*, 597 F.3d 838 (7th Cir. 2010); *Smith v. Gaetz*, 565 F.3d 346 (7th Cir. 2009). Jones' conviction resulted from the fact that the government presented ample and convincing evidence of his guilt, not because of any failure on the part of his attorney, whose performance at trial was thorough and professional.

**CONCLUSION**

For the reasons discussed above, the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" filed by the defendant, Brett Jones, is DENIED.

Date: November 23, 2010.

/s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana